IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CENTER FOR WOUND HEALING | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-3149 |
| PAUL TOOMEY | : | |

**SURRICK, J.**                                                                                           **JULY 24, 2009**

**MEMORANDUM**

Presently before the Court are Plaintiff The Center for Wound Healing's Memorandum of Law in Support of Extending Temporary Restraining Order (Doc. No. 7) and Defendant Paul Toomey's Motion to Dismiss Count II of the Complaint with Prejudice (Doc. No. 8). For the following reasons, we will extend the Temporary Restraining Order entered on July 17, 2009, for a period of ten (10) days.

**I.    BACKGROUND**

Plaintiff is in the business of developing and managing wound care centers in cooperation with acute care hospitals. Plaintiff's wound care centers offer a specialized treatment known as hyperbaric medicine, which involves administering a treatment of 100% oxygen to a patient in a pressurized chamber. Plaintiff both sells wound care centers and hyperbaric chambers to hospitals as turn-key projects and operates centers within hospitals. Plaintiff currently operates thirty-five wound centers across the country, with several in the greater Philadelphia, Pennsylvania, area. The market for Plaintiff's services and products is highly competitive.

Plaintiff entered into an employment agreement (the "Agreement") with Defendant for the period May 5, 2006, to May 4, 2009. Plaintiff hired Defendant to manage wound care centers in the region spanning Philadelphia, Pennsylvania, to Brooklyn, New York. As part of his job,

Defendant had frequent, direct, and substantial interaction with senior hospital administrators and decision makers. Defendant was a highly compensated employee who reported directly to Plaintiff's Chief Executive Officer. The Agreement contained restrictive covenants and non-disclosure and confidentiality provisions. The restrictive covenant provides, in pertinent part:

> During the term of this Agreement and for a period of twenty four (24) months following the effective date of the Executive's termination other than as a result of termination under Sections 7(e) and 7(f), of employment for any reason, the Executive shall not, directly or indirectly, whether as a principal, agent, employee, director, consultant, stockholder, partner or in any other capacity . . . (ii) solicit, divert, take away, accept, or attempt to divert or take away, in any manner, whether directly or indirectly, any business from any customer of the Company (or any of its subsidiaries or affiliates) or any prospective customer of the Company (or any of its subsidiaries or affiliates) of which the Executive became aware or with whom the Executive had contact while employed by the Company . . . .

(Compl., Ex. A § 9.) The non-disclosure provision provides, in pertinent part:

> The Executive shall not during the term of this Agreement or at any time following termination of his employment hereunder, disclose to any person, firm or corporation any confidential or proprietary information acquired by, or disclosed to, him during the course of his employment relation to the Company (or its subsidiaries or affiliates) except in the course of performing his duties for the Company. Such confidential and proprietary information shall include, but shall not be limited to, proprietary technology, trade secrets, patented processes, research and development data, know-how, formulae, contractual information, pricing policies, the substance of agreements and arrangements with customers, suppliers and others, names of accounts, customer and supplier lists and any other documents embodying such confidential and proprietary information.

(*Id.* § 10.) The contract also provides that the law of New York shall govern its interpretation.

(*Id.* § 15.)

The Agreement expired according to its terms on May 5, 2009. Plaintiff employed Defendant for an additional month while the parties attempted to negotiate a new agreement. The negotiations did not succeed, and Defendant ceased working for Plaintiff. Sometime shortly

thereafter, Defendant began working with Accelecare Wound Centers, Inc., one of Plaintiff's direct competitors. Defendant's job responsibilities at Accelecare are very similar to, if not the same as, his responsibilities when he was employed by Plaintiff.

On July 16, 2009, Plaintiff filed a Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction seeking to prevent Defendant from violating the restrictive covenants set forth in the Agreement, including the non-solicitation and non-disclosure provisions. That same day, we held an *ex parte* hearing on Plaintiff's Motion for Preliminary Injunction. Based on the allegations in the Verified Complaint and the representations of Plaintiff's counsel at the hearing, we determined that Plaintiff had met the requirements set out in Federal Rule of Civil Procedure 65(b)(1) for obtaining temporary injunctive relief *ex parte*. Plaintiff identified specific facts that clearly showed that it would be subject to immediate and irreparable harm before Defendant could be heard, and Plaintiff's counsel set out on the record their reasonable yet unsuccessful efforts to notify Defendant of the action.

On the day following the hearing, we issued an Order setting out preliminary findings and granting Plaintiff's request for a temporary restraining order enjoining Defendant from competing with Plaintiff, soliciting Plaintiff's customers, and disclosing confidential information and trade secrets. (*See* Doc. No. 6.) The Order scheduled a hearing on Plaintiff's request for preliminary injunction for Friday, July 24, 2009. The Order was set to expire after the hearing on Plaintiff's request for a preliminary injunction. Plaintiff continued to have difficulty locating Defendant after the Order issued. On Tuesday, July 21, 2009, Plaintiff made contact with an attorney whom Defendant was in the process of retaining. The following day, after Defendant

had retained counsel, the parties represented to the Court that timely completion of discovery necessary to conduct a hearing on Plaintiff's request for a preliminary injunction was going to be impossible. As a result, rather than holding a preliminary injunction hearing, we held a hearing to address whether the temporary restraining order should be extended. At the hearing conducted today, counsel argued their respective positions.

**II.     DISCUSSION**

Defendant seeks to prevent the extension of the temporary restraining order by challenging Plaintiff's ability to state a claim. He has filed a Rule 12(b)(6) Motion to Dismiss, arguing that the clear language of the Agreement demonstrates that the non-competition provisions do not apply to him. (Doc. No. 8.) Defendant points out that the non-compete clause of the Agreement only applies "for a period of twenty four (24) months following the effective date of the Executive's termination . . . ." (Compl., Ex. A § 9.) He contends that he was not "terminated" as that term is used in the Agreement, that the provision is therefore not operative, and that, as a result, the Court should not grant Plaintiff injunctive relief. The Agreement does describe the various events that will result in "termination." (*Id.* §§ 7(a)-(f).) The Agreement's expiration on its own terms is not described as a "termination" event. Hence, he is not subject to the non-compete provision.

Plaintiff responds to Defendant's argument in two ways. First, Plaintiff notes that a more accurate reading of the non-compete clause refers to the "date of the Executive's termination other than as a result of termination under Sections 7(e) and 7(f), of employment for any reason . . . ." (*Id.* § 9.) Plaintiff relies on the "termination . . . for any reason" language to argue that "for any reason" includes expiration of the Agreement. Absent renewal, he would no longer be

4

an employee of Plaintiff and hence would be terminated.  Second, Plaintiff contends that Defendant's arguments about the interpretation of the contract are best addressed at a hearing on Plaintiff's request for preliminary injunction, after the parties have had a chance to conduct discovery and present evidence.  We agree.  Defendant's argument about the Agreement's interpretation raises issues best addressed at or after a preliminary injunction hearing.

"'A temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation.'" *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (quoting *Foreman v. Dallas County*, 193 F.3d 314, 323 (5th Cir. 1999)).  Courts have recognized that "[a] temporary restraining order can inflict substantial injury on a defendant whether or not it had an opportunity to oppose its entry." *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 692 (3d Cir. 1997).  As such, "temporary restraining orders . . . cannot be continued indefinitely without observance of the safeguards required for entry of a preliminary injunction and . . . temporary restraining orders of indefinite duration . . . are subject to appellate review." *Nutrasweet*, 112 F.3d at 692.  A temporary restraining order may be extended "for good cause" for a ten-day period.  Fed. R. Civ. P. 65(b)(2).  Federal Rule of Civil Procedure 6(a) applies to the computation of the ten-day period contemplated by Rule 65(b)(2).  *See* Fed. R. Civ. P. 6(a) ("The following rules apply in computing any time period specified in these rules . . . ."); *see also Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*, 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001) ("Courts apply [Rule 6] in computing the ten-day period under Rule 65(b)." (citing *Dan River, Inc. v. Sanders Sale Enters., Inc.*, 97 F. Supp. 2d 426, 430 n.2 (S.D.N.Y. 2000); *Puertas v. Mich. Dept. of Corr.*, 88 F. Supp. 2d 775, 778 (E.D. Mich. 2000); *SEC. v. Unifund Sal*, 910 F.2d 1028, 1034

(2nd Cir. 1990); *Vittoria Corp. v. N.Y. Hotel & Motel Trades Council*, 30 F. Supp. 2d 431, 433 (S.D.N.Y. 1998))). Accordingly, a ten-day extension excludes intermediate Saturdays and Sundays. *See* Fed. R. Civ. P. 6(a)(3).

Good cause is not defined in Rule 65. Some courts and commentators have recognized the absence of authority on this subject. *See, e.g.*, *Flying Cross*, 153 F. Supp. 2d at 1260; 11A Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice & Procedure* § 2953. Notwithstanding the absence of authority, we are satisfied that there is good cause here. A ten-day extension of the July 17, 2009, Order will allow the parties to conduct the discovery necessary to present evidence at a preliminary injunction hearing. Moreover, Defendant raised no issues that were not before us at the July 17, 2009, hearing. In other words, Plaintiff is still at risk of immediate irreparable harm if Defendant violates the restrictive covenants in the Agreement. *See Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Patinkin*, No. 91-2324, 1991 U.S. Dist. LEXIS 6210, at *12 (N.D. Ill. May 9, 1991) (extending temporary restraining order because there was a "continuing possibility that defendant will solicit plaintiff's clients") (applying New York law). In contrast, a ten-day extension, while burdensome to Defendant, does not pose the same potential for irreparable harm. If Defendant prevails at the preliminary injunction phase, he will be able to recover quantifiable damages in the form of lost wages. The parties have agreed to a preliminary calculation of the damages that Defendant might incur if it were later determined that he had been wrongly enjoined. Plaintiff has offered security in that amount as required by Rule 65(c).

**III.    CONCLUSION**

For the foregoing reasons, we will extend the July 17, 2009, Order for ten days.

An appropriate Order will follow.

BY THE COURT:

/s/ *R. Barclay Surrick*
U.S. District Judge
